# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MALLOIAN,<br><br>                          Plaintiff,<br><br>   vs.<br><br><br>INFINITY INSURANCE COMPANY, an Indiana corporation, et al.,<br><br>                          Defendants. | CASE NO. 10cv1888 DMS (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**[Docket No. 21]** |

This matter comes before the Court on Defendant's motion for summary judgment. Plaintiff has filed an opposition to the motion, and Defendant has filed a reply. For the reasons discussed below, the Court grants in part and denies in part Defendant's motion.

## I.
## BACKGROUND[1]

Plaintiff Michael Malloian is a former employee of Defendant Infinity Insurance Company. Plaintiff began working for Defendant in November 2000 as an Investigator Level I in the Special Investigations Unit ("SIU"). The purpose of the SIU is "to detect and deter insurance fraud that is known to exist in the industry." (Mem. of P. & A. in Supp. of Mot. at 2.) Plaintiff was later promoted to SIU Investigator Level II, and in May 2002 he became an SIU Manager.

---

[1] The Court notes that some of the following facts are disputed. However, for purposes of the present motion, the Court construes these facts in the light most favorable to Plaintiff, and draws all reasonable inferences in his favor.

1    In late 2008, Defendant began implementing changes to its SIU division.  For instance, Defendant began using a new computer program to identify fraud indicators in Defendant's claims. Defendant also began implementing a "pure investigation" model for SIU.  This model required SIU investigators to focus exclusively on investigating claims rather than adjusting claims.  Defendant also eliminated the use of outside counsel to conduct Examinations Under Oath, leaving that task to the SIU investigators.

While these changes were being implemented, Plaintiff also experienced a change in his immediate supervisor:  Joe Descher.  Prior to becoming Plaintiff's supervisor, Mr. Descher was responsible for the SIU Eastern Region.  In addition to his supervisory responsibilities over Plaintiff, Mr. Descher was now responsible for the entire Western Region, and was also the Assistant Vice President of SIU.

In July 2009, Plaintiff attended a meeting with Descher, Bill Dibble, Senior Vice President of Claims, and Tony Smarelli, Vice President of Claims.  Plaintiff claims that during that meeting, Descher stated he "wanted the West Coast to focus more on increasing the number of denials and withdrawals of claims."  (*Id.* at 5.)  Plaintiff responded that they should treat the claims on a "case by case" basis. (*Id.*)  Subsequently, Descher told the SIU managers to set goals and objectives for denying claims. (*Id.*)

In May 2010, Descher generated a set of objectives and asked Plaintiff to distribute them to all investigators in his unit.  (*Id.*)  Those objectives contained measurements of denied and withdrawn claims for each individual investigator.  (*Id.*)  Plaintiff refers to these measurements as "impact ratios." (*Id.*)  According to these measurements, investigators were expected to deny or have withdrawals on fifty percent or more of claims investigated.  (*Id.*)

In the months preceding the issuance of these objectives, Plaintiff had two additional incidents with Descher.  The first occurred in January 2010, when Plaintiff requested that one of his investigators be allowed to work overtime.  Descher refused that request.  The second incident occurred in April 2010.  That incident involved Descher's use of the term "nigger" to describe an African American SIU investigator.  Plaintiff objected to Descher's use of that term.

On June 3, 2010, Defendant, through Smarelli, terminated Plaintiff's employment.

Plaintiff filed the present case on August 11, 2010, in San Diego Superior Court. In the Complaint, Plaintiff alleges claims for wrongful termination and retaliation. Defendant removed the case to this Court on September 10, 2010.

## II.

## DISCUSSION

Defendant moves for summary judgment, or in the alternative, partial summary judgment. It asserts there are no genuine issues of material fact on any of Plaintiff's claims, and it is entitled to judgment as a matter of law. Plaintiff disputes that there are no genuine issues of material fact, and that Defendant is entitled to summary judgment.

**A.   Summary Judgment**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt" is required to establish a genuine issue of material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

///

///

**B.     Wrongful Termination**

To establish a claim for wrongful termination in violation of public policy, Plaintiff must prove: (1) he was employed by Defendant, (2) Defendant terminated Plaintiff's employment, (3) Defendant's alleged violation of public policy was a motivating reason for the termination of Plaintiff's employment, and (4) the termination of Plaintiff's employment caused him harm. Judicial Council of California Civil Jury Instruction 2430. In this case, Plaintiff alleges three bases for his wrongful termination claim. First, he asserts he was wrongfully terminated in violation of California Government Code § 12940(h). Second, Plaintiff claims he was wrongfully terminated for complaining about Defendant's nonpayment of overtime. Third, Plaintiff contends he was wrongfully terminated for protesting Defendant's violation of California Insurance Code §§ 790.03(h)(1) and (3). The first basis for this claim is subsumed by Plaintiff's second claim for retaliation, which the Court discusses below. A discussion of the other two bases for Plaintiff's wrongful termination claim follows.

   1.    Overtime

With respect to the overtime issue, Defendant argues there is no evidence Plaintiff engaged in any protected activity, and even if there was, there is no evidence of causation. Plaintiff disputes this argument, and asserts that he "communicated his concern to Descher" that employees were working overtime for which they were not being paid. (Mem. of P. & A. in Opp'n to Mot. at 13.) Were there evidence to support this assertion, Plaintiff would have a valid argument that he engaged in protected activity. *See Gould v. Maryland Sound Industries, Inc.*, 31 Cal. App. 4th 1137, 1149 (1995) (citing *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1095 (1992)) ("overtime wages are another example of a public policy fostering society's interest in a stable job market.") However, there is no evidence that Plaintiff made such a complaint. Rather, Plaintiff states he "requested Descher to allow one of my overworked subordinates, Saladino, to be allowed to work 4 hours of overtime. Descher refused this request." (Decl. of Michael Malloian in Opp'n to Mot. ("Malloian Decl.") ¶ 6.) A request that an employee be allowed to work overtime, and the employer's refusal of that request, is not the same as nonpayment of overtime actually worked. While a complaint about the latter may be protected activity, a complaint

about the former is not. Thus, Defendant is entitled to summary judgment on Plaintiff's wrongful termination claim to the extent it relies on an overtime theory.

        2.        California Insurance Code §§ 790.03(h)(1) and (3)

The second theory underlying Plaintiff's wrongful termination claim is that his employment was terminated because he complained about the use of "impact ratios" in employee performance reviews. Specifically, Plaintiff states that in July 2009, Descher stated "that he 'wanted the West Coast to focus more on increasing the number of denials and withdrawals of claims[,]'" to which Plaintiff responded "that we should focus on each claim separately on a 'case by case' basis." (*Id.*) This issue came up again in April 2010 when Descher "forwarded a spreadsheet to [Plaintiff] regarding the amount of accepted, closed and denied claims." (*Id.* ¶ 8.) At that time, Plaintiff "cautioned [Descher] against preparing these ratings, as [Plaintiff] believed they were unethical and illegal." (*Id.*) The following month, Plaintiff "questioned why [Descher] was considering impact ratios in evaluating the performance of Investigator Heather Yee." (*Id.*)

Defendant denies that it used "impact ratios" in evaluating the performance of its employees, and it takes issue with the evidence in support of Plaintiff's claim. (Mem. of P. & A. in Supp. of Mot. at 12-13.) However, Defendant fails to show the absence of a genuine issue of material fact to support summary judgment in its favor. On the contrary, the evidence submitted, viewed in Plaintiff's favor, reflects Plaintiff's expressed concern over Defendant's focus on the number of claims denied or withdrawn, and the use of those statistics in employee performance reviews. (*See, e.g.*, Malloian Decl. ¶ 8.) In light of this evidence, Defendant is not entitled to summary judgment on Plaintiff's wrongful termination claim to the extent it relies on the use of "impact ratios."

**C.**    **Retaliation**

Plaintiff's remaining claim is for retaliation. "In order to make a prima facie showing of retaliation, the plaintiff must show that he engaged in a protected activity, that the employer subjected him to an adverse employment action, and that a causal link exists between the protected activity and the employer's action." *Villanueva v. City of Colton*, 160 Cal. App. 4th 1188, 1198-99 (2008) (citing *Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002)). Defendant here asserts Plaintiff

does not have evidence of the first element, therefore it is entitled to summary judgment on this claim.

The facts surrounding Plaintiff's retaliation claim are disputed. Plaintiff asserts Descher made an inappropriate comment about an employee's race, to which Plaintiff objected. Descher disputes that he made the comment, but even assuming he made the comment, Defendant argues Plaintiff's objection thereto was not protected activity. However, the Court disagrees. In *Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187 (7th Cir. 1994), the plaintiff submitted a memorandum to her supervisor concerning his use of a racial slur during a company meeting. *Id.* at 190. The district court found that conduct constituted "statutorily protected expression[,]" and the appellate court agreed. *Id.* at 195. Other courts have reached the same conclusion. *See Andrews v. Fantasy House, Inc.*, 782 F.Supp.2d 753, 758-59 (D. Minn. 2011) (finding plaintiff engaged in protected conduct when she objected to racist comment by her manager); *Lyte v. South Central Connecticut Regional Water Authority*, 482 F.Supp.2d 252, 268-69 (D. Conn. 2007) (finding plaintiff engaged in protected conduct when he confronted supervisor about racially disparaging comments); *Young v. Time Warner Cable Capital, L.P.*, 443 F.Supp.2d 1109, 1127 (W.D. Mo. 2006) (finding protected activity when plaintiff complained to management about supervisor's remark about plaintiff's skin tone); *Rowland v. Franklin Career Services, LLC*, 272 F.Supp.2d 1188, 1207 (D. Kan. 2003) (complaint about racial slur sufficient to defeat summary judgment of no protected activity). Thus, Defendant is not entitled to summary judgment based on a lack of protected activity.[2]

Nevertheless, Defendant argues it had legitimate, non-retaliatory reasons for terminating Plaintiff's employment. Specifically, Defendant asserts it terminated Plaintiff's employment because Plaintiff was engaging in disruptive, insubordinate and unprofessional conduct. Defendant submits evidence to support this assertion, (*see* Notice of Lodgment of Exs. in Supp. of Mot., Exs., G, H, N), which Plaintiff does not specifically dispute. Instead, Plaintiff argues there are genuine issues of material fact about whether these reasons were simply a pretext for Defendant's retaliatory conduct.

---

[2] The Court's finding that Plaintiff engaged in protected activity also defeats Defendant's motion for summary judgment on Plaintiff's wrongful termination claim to the extent it relies on a violation of California Government Code § 12940(h).

      Plaintiff bears the burden of persuasion to show pretext. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 745 (9th Cir. 2004). To meet this burden, Plaintiff must introduce evidence from which a reasonable jury could infer that Defendant did not fire him for the reasons set out above, but rather fired him in retaliation for objecting to Descher's inappropriate comment about another employee's race. *See Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1115 (9th Cir. 2003). Plaintiff can demonstrate Defendant's "proffered reasons for firing him are pretextual 'either directly by persuading the court that [the retaliatory] reason [for the decision] more likely motivated [Defendant] or indirectly by showing that [Defendant's] proffered explanation is unworthy of credence.'" *Id.* (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Here, Plaintiff argues there is a genuine issue of material fact on the issue of pretext based on Defendant's failure to comply with its discipline policy and its failure to allow Plaintiff to explain the conduct giving rise to the termination of his employment. Plaintiff also relies on the evidence supporting his prima facie case of retaliation.

      Notably, Plaintiff fails to provide any evidence of Defendant's "progressive discipline policy." (Mem. of P. & A. in Supp. of Opp'n to Mot. at 16.) Indeed, the evidence submitted by Defendant indicates there is no such policy. (Notice of Lodgment of Exs. in Supp. of Mot., Ex. F at 364) (stating "guidelines do not mandate a particular sequencing of discipline steps and do not mandate that each type or class of violation must have a separate progressive track."); (*Id.* at 366) ("Management reserves the right to take whatever action it deems appropriate, based on each particular set of circumstances.") Thus, this argument does not assist Plaintiff in showing pretext.

      Plaintiff's only other argument is that the evidence in support of his prima facie case supports a finding of pretext. That evidence consists of Descher's comment on an employee's race, and Plaintiff's objection to that comment. Noticeably absent, however, is any evidence that Smarrelli, or any other employee of Defendant, was privy to this conversation between Plaintiff and Descher. Plaintiff does not state that he informed any one else at the company about this conversation, and given the alleged content of the conversation, there is no reason why Descher would have relayed this conversation to his superiors or anyone else in the company. Absent evidence that anyone else was made aware of this conversation, it could not have served as the basis for Defendant's termination of

Plaintiff's employment. In other words, Plaintiff has not come forward with sufficient evidence of pretext to withstand summary judgment on his retaliation claim.

**D. Punitive Damages**

Finally, Defendant asserts Plaintiff is not entitled to recover punitive damages because it had a written policy prohibiting discrimination. In support of this assertion, Defendant cites *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999). That case, however, dealt with the availability of punitive damages for claims under Title VII. Here, Plaintiff's only remaining claim is for wrongful termination under California law. On this claim, Defendant has not shown that Plaintiff is barred, as a matter of law, from recovering punitive damages. Accordingly, Defendant's request to dismiss or strike Plaintiff's claim for punitive damages is denied.

### III.
### CONCLUSION

For these reasons, the Court grants in part and denies in part Defendant's motion for summary judgment. Specifically, the Court grants Defendant's motion as to Plaintiff's claim for retaliation and his claim for wrongful termination to the extent it relies on any overtime issue. The Court denies the motion as to the other theories put forth in support of Plaintiff's wrongful termination claim, and with respect to Plaintiff's request for punitive damages.

**IT IS SO ORDERED**.

DATED: November 21, 2011

HON. DANA M. SABRAW
United States District Judge